# Vandevort's Appeal.

*Widow's Appraisement to be made promptly.—Relationship of Appraisers, no ground for setting it aside.—Guardian of minor Children liable to Costs for untimely interference therewith.—Valuation of Appraisers, when final.*

1. Under the Widows' Exemption Law of 14th April 1851, the appraisement of, the decedent's goods should be made, and the widow's share set apart for her, as promptly as in the case of a debtor electing to take his exemption under the Exemption Law of 1849: and the appraisement of the widow's portion is to be made by the appraisers of the other personal estate.

2. It is not enough to avoid the appraisement of the amount chosen by the widow that two of the appraisers were her relatives.

3. A guardian of the minor children of a decedent, nearly one year after the widow's appraisement had been made, and nine months after it had been confirmed, filed exceptions on the ground that the valuation of the articles

[Vandevort's Appeal.]

chosen by her was too low: the court, on rule granted to show cause why it should not be set aside, appointed an auditor, who made a new and increased valuation, which was confirmed.  *Held,*

1st. That as the wards had, with the widow, enjoyed the use of the goods appraised for so long a time, their guardian had no right to complain, and that for his needless interference the costs of the proceedings must be imposed upon him.

2d. That the valuation by the auditor could not be substituted for that of the appraisers provided by law.

APPEAL from the Orphans' Court of *Butler county.*

This was an appeal by Jane Vandevort, widow of John Vandevort, deceased, from the decree of the Orphans' Court setting aside the appraisement made for her of the goods and chattels of deceased, under the Act of Assembly allowing the widow and children of a decedent to retain goods, &c., to the value of $300.

The appraisement was made in October 1858, soon after the death of Mr. Vandevort; was filed October 13th 1858, and confirmed by the court December 24th following.

On the 5th of October 1859, Samuel Marshall, as guardian of the minor children of Mr. and Mrs. Vandevort, filed the following exceptions:—

1. The paper does not show that the appraisers were sworn.

2. The paper only sets forth two appraisers, both of whom were near relatives of the widow.

3. The property was appraised entirely below its true value.

4. The appraisers were unduly influenced by the administrator and widow, and induced to make the appraisement too low.

5. The paper contains a list of the articles taken by the widow at the appraisement, in addition to the property taken under the Act of 1851, which is improper.

To these exceptions the affidavit of Samuel Marshall was attached, stating that William Vandevort and Robert Gilleland, two of the appraisers, are brothers-in-law of the widow; that in the appraisement of the property retained by the widow in this case, the said administrator unduly influenced the appraisers, and induced them to appraise the goods entirely below their cash value.

On these exceptions the court granted a rule on L. R. McAboy, the administrator, to show cause why the confirmation of this appraisement should not be taken off.

The rule was served on L. R. McAboy on the 1st of November 1859; but no answer thereto in writing was filed.   The affidavit made by the appraisers on the back of the paper on which the widow's list of articles selected, and their value, were set forth, was in the following words, viz. :—"Personally came before me John Graham, William Vandevort, and Robert Gilleland, who were duly sworn to appraise and value the amount of $300 for the benefit of the widow of the late John Vandevort, deceased, of

[Vandevort's Appeal.]

Cranberry township.   Witness my hand and seal this October 6th 1858.   DAVID GARVIN, [L. S.] Justice of the Peace."

There was also on this paper the following certificate, viz. :—

" We, the subscribers, do certify that the articles enumerated on this paper were valued by us, that the widow of the late John Vandevort might choose out of them the amount of $300, according to law.            JOHN GRAHAM,
                                                      WM. VANDEVORT,
                                                      ROBT. GILLELAND."

On the rule to show cause, testimony was taken on behalf of the exceptant and the administrator, whereupon the court, on the 3d day of December 1860, refused to approve of the appraisement as filed, and ordered the same to be quashed at the costs of L. R. McAboy, the administrator, and also directed that a new valuation be made by an auditor, to be appointed for the purpose, upon the testimony adduced, and such further evidence as the parties interested shall bring before him, and that if thereby an excess shall appear to have been taken, the same shall be accounted for by Jane Vandevort, the widow, and L. R. McAboy, the administrator, shall be charged therewith in the settlement of the estate of the decedent.

Edward M. Bradin, Esq., the auditor under this decree, proceeded to take testimony, and settled the rule by which he ascertained the value of the property as follows, viz. :—" The true test of the value of the property is what it would have sold for at vendue on the usual terms.   The widow would not have been entitled to the proceeds if it had been sold by the administrator for cash or on time, and therefore she cannot have it at a cash price."   He therefore increased in value the items taken by the widow to $98.50.   The auditor also found, as the court had already found, that there was no evidence of collusion between the administrator and the widow.

The widow was not notified of the proceedings until after the appointment of the auditor.   After his report was filed she excepted to it.   But the court (AGNEW, P. J.) made a final decree, directing the costs of audit to be paid out of the estate of John Vandevort, confirmed the auditor's report, and decreed that the excess found by the auditor in the valuation of the property be refunded by Jane Vandevort, the widow, to L. R. McAboy, the administrator, and that the said administrator be charged with the said excess in the settlement of his administration account; from which decrees the widow appealed, as above stated.

*R. & S. Woods,* for appellant.

*Purviance,* for appellee.

[Vandevort's Appeal.]

The opinion of the court was delivered, January 5th 1863, by
WOODWARD, J.—The widows' law of 14th April 1851, contemplates a prompt and finished proceeding in her behalf, immediately after the administrator has qualified himself to act.
Appraisement of the defendants' goods is the first duty of the administrator, under the general law of his office; but it is especially so under this special enactment in behalf of the widow. He is to cause it to be done with all the promptitude, and in the same manner that the sheriff or constable proceeds, under the Act of 1849, when a similar amount of a debtor's goods are to be exempted from sale. By the Act of 8th April 1859, Purd. 1314, the appraisement shall be made by the appraisers of the other personal estate of the decedent.

The administrator in this case, though acting before the Act of 1859 was passed, shaped his course in the manner it afterward sanctioned. He had the appraisement made promptly by the general appraisers of the whole estate, and it is certainly no objection to their proceedings that they first appraised all the goods, and then let the widow select her share according to that valuation, instead of first letting her select and then appraising what she took. It is said they were not sworn, but the justice's certificate shows that they were duly sworn to appraise and value the widow's share, if indeed their oath reached no further. As there is no controversy touching any other part of the estate than the widow's portion, this objection is silenced by the magistrate's certificate. Another complaint is that two of the appraisers were relatives of the widow. The Act of 1834, under which administrators cause appraisement of decedents' estates to be made, does not disqualify relatives from acting as appraisers, and if the power to review their action exists, which was exercised in this case, there can be no danger of mischief from this source. Administrators ought to select disinterested and competent men for appraisers, but the mere fact of the relationship of two out of three appraisers to the decedent, or the widow, is not enough to avoid their proceedings.

But the great objection to the appraisement is that it was too low. And this objection comes from no creditor of the estate, but from Samuel Marshall, as guardian of the four minor children, three of whom are girls, and though guardian from immediately after the death of the decedent, Mr. Marshall's exceptions to the appraisement were not made until 5th October 1859, one year, less eight days, after the appraisement was filed, and more than nine months after it had been confirmed by the court. Having thus tardily filed his exceptions, he obtained a rule on the administrator without any notice to the widow to show cause why the confirmation of the appraisement should not be taken off. Voluminous evidence was taken under this rule, which was

7 WR.—30

so contradictory that the court declared it difficult to arrive at satisfactory conclusions; but on account of the irregularities in making and returning the appraisement, they took off the confirmation, and referred it to an auditor to make a new valuation of the goods upon testimony, and if it should appear that the · widow had an excess, she was to account for it to the administrator, who was to be charged with it in settlement of the estate. The auditor under this decree proceeded and took an immense mass of testimony, and made a very full written report, wherein he discussed "the true test of the value of property," and concluded by making the following increase on certain items of the goods taken by the widow, viz.: Increase on beds $28, dishes, &c., $4.50, sheep $10, cows $40, calves $6, and horse $10; in all $98.50. The widow having had notice of this audit, filed eleven exceptions to the report, which the court in an elaborate opinion overruled, and she now appeals to us.

It strikes us that this was an extraordinary proceeding. A fraudulent valuation may undoubtedly be set aside if proceeded against in due time, ·but both the court and the auditor acquit this widow of any collusion with the administrator, or other unfair practice. The auditor says in terms that "she did not obtain the property wrongfully." Then she obtained it rightfully, in the ordinary course of administration, and with the express approbation of the court. The Act of Assembly set it apart for herself "and family," as if it were to be consumed in the support of herself, and of others dependent upon her. After using and consuming the goods for a year, it would seem to be a great hardship to put a widow through a course of litigation upon the question, whether the valuation ought not to have been according to what the goods would have sold for on credit, instead of their cash value. But to subject her to this vexatious litigation at the instance of the guardian of those very children who had shared with her the beds, the furniture, and indeed all of the property, was an intolerable wrong. What right had *he* to complain that she had got the dishes and sheep and calves a pennyworth too cheap? Even if she had obtained them fraudulently, it did not become him to throw the first stone. But having received them with no taint of fraud, as the very provision which the law allowed for the present support of herself and children, he was the last man on earth that should have drawn her title into question. But if, in any view of his duty, he felt bound to intervene, why did he lie by a year? Why did he not rush into court with becoming promptitude to take away from his wards and their mother the trifle too much which the law had given them? Having waited so long, he should have kept himself out of court altogether.

What is fatal to the decree is that it substitutes a valuation by

[Vandevort's Appeal.]

an auditor for that of the appraisers provided by law. These appraisements of a decedent's goods are to be made, upon inspection and examination, by men sworn to exercise a sound judgment, not by an astute lawyer on testimony brought before him. Whether the appraisers are well or ill posted in principles of political economy, whether they govern themselves by cash or credit values, they are nevertheless the legal judges of the goods which a widow takes for her $300. And that they did not greatly err in this instance is proved by the sale of the sorrel horse, the only article in the list which was put into market by the widow. They appraised the horse at $90. The widow kept him a year and a half, and then sold him for $90, at nine months, equal to $85.75 in cash, the purchaser declaring that he would not give that price for him if he had money to buy from others. The auditor, after discussing the age of the horse, eleven years old when the widow took him, and his points as described by numerous witnesses, came to the conclusion that he was worth $100 when she obtained him, and ought to have been appraised at that. Having throughout his report rejected the principle of cash valuations, and insisted on holding the widow to market prices, where time was given, the auditor was not quite consistent with himself when he charged the widow with some $15 more for the sorrel horse than she could get for him on a nine months' credit. Had the other articles been subjected to a similar test, it is fair to infer that the judgment of the appraisers would have been vindicated as strikingly as in the instance of the sorrel horse. But whether capable of vindication or not, their judgment is the standard of measurement provided by law, and therefore it was error in the court to set it aside, and substitute for it the reasonings and conclusions of an auditor of their own appointment.

The proceedings of the Orphans' Court on the petition of Samuel Marshall, as guardian of the minor children of John Vandevort, deceased, are set aside and annulled, and the decree of the 24th December 1858, confirming the appraisement of 13th October 1858, is affirmed, and Samuel Marshall is ordered to pay the costs in his own right.