## Shumate *versus* McGarity.

1. The widow of McGarity, who died before the Act of 14th April 1851, took out letters of administration on his estate, and about fourteen years after her husband's death had his real estate appraised and set apart to her as widow under that act: *Held*, in ejectment on her title, that the Orphans' Court had no jurisdiction, and that she took no title.

. 2. In ejectment brought by the widow upon her title acquired under these proceedings in the Orphans' Court, the court below charged that although the proceedings in the Orphans' Court had been instituted under the Act of 14th April 1851, yet that might have been merely a clerical error and they might be considered as held under the Act of 26th April 1850, and therefore if the jury found that McGarity was insolvent when he died, they should find for the plaintiff: *Held*, to be error, and that the widow's title must depend entirely upon the act under which the proceedings to acquire it were instituted.

October 24th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Cambria county:* Of October and November Term 1876, No. 45.

Ejectment by Elizabeth McGarity against James Shumate. Both parties claimed title under John McGarity, the plaintiff as his widow, and the defendant as the husband of his only child. McGarity died intestate on April 5th 1851. The plaintiff, his widow, immediately took out letters of administration on his estate. In 1865, after his estate had been settled, the widow procured an appraisement of the real estate in question under the Act of April 14th 1851; this appraisement (at $250) was presented to the proper court more than a year afterwards, and approved by it on June 6th 1866, and the property was set apart to the plaintiff herein; in 1874 she brought this action upon the title so acquired.

The court below (Dean, P. J.) charged the jury that the rights of the plaintiff depended upon the Act of 26th April 1850, which was in force at the time of the death of McGarity; that although the appraisement in the Orphans' Court purported to have been made under the Act of 14th April 1851, that may have been an error of the scrivener, and that if the jury believed from the evi-

[Shumate v. McGarity.]

dence that McGarity was insolvent when he died, the verdict should be for the plaintiff. The jury so found, and after judgment thereon, the defendant took this writ of error.

*John P. Linton* (with him *W. H. Sechler*), for the plaintiff in error.

*R. L. Johnston*, for the defendant in error.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1877.

John McGarity, the husband of the plaintiff below, and father of Mary E., wife of the defendant (plaintiff in error), died April 5th 1851. On the 10th of the same month, letters of administration were issued to Elizabeth, the widow, who proceeded in due course to settle the estate. For the period of fourteen years she laid by, and made no motion towards having set apart for her own use the widow's allowance under the Act of 1850. On the 7th of June 1865, however, she caused the property in dispute to be appraised. By the appraisement so directed, which was confirmed by the court, June 1866, the premises in controversy were set apart for her use. Were this an appeal from the decree of the court above stated we would not hesitate to reverse it at once, for after so great a length of time the presumption of a waiver, in favor of the heir, would be treated as conclusive. The case, however, as it is presented to us, involves this action of the Orphans' Court only collaterally, and if it be conceded that that court had jurisdiction, its decree cannot now be questioned. True it is, that in the case of Burke v. Gleason, 10 Wright 297, such a decree was held of no validity in an ejectment by an heir of the decedent against those claiming under the widow. This decision seems to have been rested upon a kind of mixture or combination of two reasons: (1.) That she had not asserted her right in time, seven years having elapsed from the death of her husband, before she procured the appraisement to be made; (2.) That in the meantime she had re-married and was not, in consequence thereof, a widow within the contemplation of the Act of 1851. We are very much inclined to doubt the soundness of the conclusion at which the court arrived in the above case. The question was one of jurisdiction in the Orphans' Court, and we cannot see how the mere lapse of time, could oust that jurisdiction in the case of a widow's allowance, any more than for like cause, the jurisdiction of the Common Pleas could be ousted in an action of ejectment. In either case it might be conceded that a decree or judgment for the claimant after the lapse of a great length of time, would be wrong, but the correction thereof could not be had in a collateral proceeding, but only by appeal or writ of error. So the widow's right to have $300, out of her deceased

[Shumate *v.* McGarity.]

husband's estate, notwithstanding her re-marriage may intervene, seems to be taken for granted in the case of the Commonwealth *v.* Powell, 1 P. F. Smith 438. However this may be, the case of Burke *v.* Gleason is not in point with the one now under consideration, for here there is no second marriage: the plaintiff still continues to be the widow of John McGarity, and, upon the mere ground of lapse of time, we cannot consent to impeach the jurisdiction of the Orphans' Court.

But it might well be presumed, after so great a length of time as fourteen years, that the widow had no right, under the Act of 1850, because of the solvency of the husband's estate, and it is in perfect keeping with such a presumption, that she does not found her claim on that act, but upon the Act of 1851. Under this statute, however, she had no right, for McGarity died before it was approved.

It follows, that as Mrs. McGarity had no right, the Orphans' Court could confer none upon her, and that the decree was without authority and void. To meet this difficulty, and notwithstanding the presumption of which we have spoken, the learned judge permitted the plaintiff to prove the insolvency of the estate, in order to establish her right under the Act of 1850. This might have been permissible in the Orphans' Court, before decree, on a motion to amend, or to have a re-appraisement, but, as the records of that court show affirmatively that the appraisement was had under the Act of 1851, we cannot see how the matter was helped by the introduction of proof to show that she might have claimed under the Act of 1850; for the fact still remained that the very records, on which the plaintiff depended for her title, showed that the proceedings were had under a law that gave her no right.

Judgment reversed and a new venire ordered.