# In re Reinstein's Estate.

*Decedent's estate—Widow's exemption—Laches.*

Where it appears that no claim for widow's exemption was made until after the expiration of 25 years the decree confirming the appraisement is not void, but voidable only, and the rights of the parties at interest are to be determined on equitable principles.

*Widow's exemption—Exceptions—Laches of exceptant.*

Where a petition is presented asking for the opening, vacation and setting aside of a widow's appraisement and proceedings there-

under, and it appears that the petitioner had full knowledge of existing conditions for eighteen years before he asserted his rights, he must be considered guilty of such laches as to imply a waiver.

Argued April 10, 1918. Appeal, No. 83, April T., 1918, by M. M. Fisher, from decree of O. C. Jefferson County, December T., 1887, No. 15, setting aside the widow's appraisement in the estate of Jacob Reinstein, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Petition for rule to show cause why appraisement and decree of court allotting a tract of land to Hannah Reinstein, widow of Jacob Reinstein, should not be opened, vacated and set aside. The court, after hearing, made the rule absolute and entered a decree setting aside the appraisement and decree of May 9, 1892, which had allotted the tract of land in question to the said Hannah Reinstein.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*Raymond E. Brown,* for appellant.—The widow's exemption was legally made and cannot be attacked collaterally: Act of April 14, 1851, Section 5, P. L. 613; Seller's Est., 82 Pa. 153; Runyan's App., 27 Pa. 121; Sipes v. Mann, 39 Pa. 414; Greenawalt's Est., 16 Pa. Superior Ct. 263; Cierlinski v. Rys., 225 Pa. 312; Kauffman's App., 112 Pa. 645; Nottes' App., 45 Pa. 361; Scott's Est., 18 Pa. Superior Ct. 375.

The widow was not guilty of such laches as to imply waiver of her exemption: Act of April 14, 1851, P. L. 612; Hansell v. Downing, 17 Pa. Superior Ct. 235; Beetom & Co. v. Getz, 5 Pa. Superior Ct. 71; Potter's Est., 6 Pa. Superior Ct. 627.

The petitioner was guilty of laches: Sutton's App., 112 Pa. 598; Greenhœ v. College, 144 Pa. 131; Schenck's

App., 94 Pa. 37; Cunningham's Est., 212 Pa. 441;
Braddock Trust Co. v. Guarantee Trust, Etc., Co., 180
Pa. 529; Fidelity Insurance Company's App., 115 Pa.
157; William's Est., 141 Pa. 436.

*J. W. Reed,* of *Reed, Boulton & Forsyth,* for appellee.
—The entire proceedings by the widow were conducted in
violation of law: Hambest's Est., 21 Pa. Superior Ct.
427; Foster et al. v. Commonwealth, 35 Pa. 148; Wall v.
Wall, 123 Pa. 545.

Laches of the widow amounted to a waiver of the ex-
emption: Burk v. Gleason, 46 Pa. 297; Commonwealth
v. Powell, 51 Pa. 438; Shumate v. McGarity, 83 Pa. 38;
Kerns' App., 120 Pa. 523.

OPINION BY PORTER, J., February 28, 1919:

Jacob Reinstein during his lifetime entered into writ-
ten articles of agreement with Hiram Carrier for the pur-
chase of a tract of land containing one hundred acres, in
Pine Creek Township, Jefferson County, entered into
possession of said land in accordance with the provisions
of the agreement, and paid all of the stipulated purchase
money except sixty-four ($64) dollars. He was residing
upon the tract in August, 1864, when he died, leaving to
survive him a widow, Hannah Reinstein, and four chil-
dren. The widow continued to reside upon the land and
there reared her children, who one after another married
and left her, until March 15, 1898, when she, by general
warranty deed, conveyed the tract to the appellant. In
September, 1871, she paid the balance of the purchase
money to Hiram Carrier and he delivered to her a deed
purporting to convey the property to the "heirs of Jacob
Reinstein," the deed containing the recital that the tract
was "the same land sold to Jacob Reinstein in his life-
time by Hiram Carrier." Mrs. Reinstein, the widow,
objected to the form of the deed, but was told by the
grantor that it could not be made otherwise. It may be
assumed that the widow was illiterate, for in all the writ-

ten instruments which were offered in evidence, she executed the same by making her mark. On September 10, 1877, William Reinstein, one of the sons of the decedent, conveyed his interest in the tract of land to Edward O'Donnell, who had married one of the daughters of the decedent. On October 18, 1887, Hannah Reinstein, the widow, who during all this time had remained in exclusive possession of the property, renounced her right to letters of administration upon the estate of the decedent, and the register of wills issued such letters to John Cable. Thereupon the widow gave written notice to the administrator that she elected to retain real property belonging to the estate of deceased to the value of three hundred ($300) dollars and requested that the same be appraised and set apart to her according to law. The administrator appointed appraisers, who, after being duly sworn, determined that the tract could not be divided without injury to or spoiling the whole, and that they appraised and valued the same at three hundred ($300) dollars, which appraisement was filed on November 14, 1887, duly advertised, and was, on December 12, 1887, presented in open court and confirmed nisi, and on May 9, 1892, the appraisement was confirmed absolutely, nunc pro tunc as of December 15, 1887, and the tract of land described was decreed to be and remain in the said Hannah Reinstein, her heirs and assigns, firm and stable forever. Hannah Reinstein, by deed dated March 15, 1898, and recorded on the 28th day of the same month, for the consideration of seven hundred ($700) dollars, conveyed the tract of land to M. M. Fisher, the appellant. Fisher went into possession of the tract, and there is nothing in the evidence to indicate that any other person had been in actual possession of any part of it until Edward O'Donnell, the appellee, attempted to challenge the regularity of the proceedings in the Orphans' Court as hereinafter stated. On January 8, 1917, O'Donnell presented his petition to the court below praying for a rule on Fisher to show cause why the demand of the

widow, the appraisement, and the decree of court allotting the tract of land to the said Hannah Reinstein should not be opened, vacated and set aside; the court granted the rule prayed for, whereupon Fisher filed an answer setting forth all the facts above stated.  The parties took depositions and the court below, after a hearing, made the rule absolute, and entered a decree vacating and setting aside the appraisement and the decree of May 9, 1892, which had allotted the tract to the widow.  The appellant assigns for error this action of the court.

The first question presented is the nature of the title of Jacob Reinstein to this tract of land, at the time of his death, as affected by the character of the deed subsequently executed by Carrier, the grantor.  The deed was to "the heirs of Jacob Reinstein," but it recites that the land had been sold to Jacob Reinstein in his lifetime, it does not say whether Reinstein had paid all of the purchase money, but it clearly establishes that Reinstein had died seized of an equitable title to the land.  That equitable title was a part of his estate and was subject to the rights given by law to his creditors, his widow and his heirs.  It was not within the power of Carrier or any other person to abrogate those rights.  Carrier did not attempt to convey to the children by name, nor to designate the heirs; the purpose of his deed was, the purchase money having been paid, to divest himself of the legal title and vest it in the persons who were entitled under the law to take the land, and the word "heirs" is not in such a conveyance to be construed in its technical sense.  The testimony of the witnesses called by the appellee was in entire harmony with the recitals of the deed and established that the decedent had during his lifetime an equitable title to the land, under a written agreement, and that he had paid all but a small amount of the purchase money and that that balance had been paid by his widow after his death.  The land was such property as the widow was entitled to take as her exemption, under the Act of April 14, 1851, P. L. 612, unless that

right was defeated upon some ground other than the mere nature of the title.

The reason upon which the court below based its action for setting aside the appraisement and vacating the decree was the long delay of the widow in asserting her right to the exemption.  The learned judge was of opinion that the widow had no right at the time she attempted to assert it, that the Orphans' Court could confer none upon her, and that the decree was void.  The question presents some difficulty and the action of the court below was not without authority to support it.  It was held in Burk v. Gleason, 46 Pa. 297, that a widow must make her claim within a reasonable time after her husband's death; and that she could not claim after the lapse of seven years and a second marriage.  There were in that case conflicting decrees of the Orphans' Court and, although the action was collateral, the rights of the parties could not be determined without impeaching one of the decrees.  It must, however, be conceded that that decision is authority for the doctrine that the Orphans' Court is without jurisdiction to entertain a proceeding for appraising and setting over real estate to a widow, when she has not asserted her right within a reasonable time after her husband's death and has remarried, that a decree made in such circumstances is void, and may be attacked in a collateral proceeding.  The soundness of that decision was distinctly questioned in Shumate v. McGarity, 83 Pa. 38; in that case, as in the present one, the widow had not remarried, and the court said: "upon the mere ground of lapse of time, we cannot consent to impeach the jurisdiction of the Orphans' Court."  The ground upon which that case was put was that the record of the Orphans' Court disclosed that McGarity had died prior to the approval of the Act of 1851 and, for that reason, the Orphans' Court was without jurisdiction.  The question in that case also arose in a collateral proceeding.  In Kerns' App., 120 Pa. 523, the application for redress was made in the same proceeding, it did not in-

volve a collateral attack, and it was there held that a delay for over three years on the part of the widow in exercising her right was fatal to the right and conclusive evidence of a waiver. The Orphans' Court had in that case declined to vacate its decree confirming the appraisement, and the Supreme Court entered fully into the merits of the case, giving weight to the fact that the widow had remarried, and entered a decree vacating the appraisement. That case is not, however, authority for the position that the decree confirming the appraisement in such a case is void, that is, one which the Orphans' Court was without jurisdiction to enter. In so far as the authorities hereinbefore cited might be said to have given countenance to the suggestion that the Orphans' Court was without jurisdiction to enter a decree in such a case, and that the decree when entered was void, and not merely voidable, those decisions must be accepted as overruled by the case of Cierlinski v. Rys., 225 Pa. 312. In that case the record of the Orphans' Court disclosed that the widow had not made her application for a year and a half after the death of her husband and set out the fact that she had remarried, and it was held that the Orphans' Court had exclusive jurisdiction to decide, in the first instance, whether the petitioner's claim to the land should be allowed, notwithstanding her remarriage, and its decision could be reviewed only by an appellate court. That decision was clearly in harmony with the well-established rule upon questions of like character, and we must accept it as binding upon us: Williams' Est., 141 Pa. 437; Greenawalt's Est., 16 Pa. Superior Ct. 263; In re Beeder's Est., 10 Pa. 261; Foster v. Commonwealth, 35 Pa. 148. The decree confirming the appraisement in this case was not void; it was voidable only, and the rights of these parties are to be determined on equitable principles.

Mrs. Reinstein, the widow, had retained possession of this tract of land for thirty-four years after her husband's death; she had paid off the balance of the pur-

chase money, but this she had not succeeded in doing until her husband had been dead for seven years, during which time the legal title had been in Carrier. She was an illiterate woman, could not write her own name, and it is probable was ignorant of her rights, at least as long as the legal title was in Carrier. O'Donnell asserts that he acquired title to one-fourth of the land in 1877, but his testimony discloses that he knew the widow was in exclusive possession of the land and, as he says, "Well, I guess she always did claim a little title to it. We knew she had an interest in it. We knew that first rate. After I got married, why I knew she had an interest in it, a dower or something that way, or whatever you might call it." He testified that when letters of administration were taken out, in 1887, he became aware of that fact shortly afterwards or, to use his own words "No, it wasn't a great while after it," and that he made no objection. He testified that while he did not know of the appraisement at the time it was made, he did find it out shortly after Mr. Fisher had bought the land. With this knowledge, in 1898, he permitted Fisher to take and hold possession of the land and he (O'Donnell) made no attempt to challenge the regularity of the appraisement for over eighteen years. He made no attempt to have the appraisement set aside so long as his mother-in-law, Mrs. Reinstein, was living, and only after her death did he attempt to set aside the proceeding under which she supposed that she had acquired title. This case is one involving the application of equitable principles, and is to be determined from its own peculiar facts. O'Donnell for eighteen years had full knowledge of all the existing conditions and with that knowledge he permitted Fisher to rely upon the decree of the Orphans' Court, which was the foundation of his title. He was clearly guilty of laches, such as imply a waiver of his rights: Appeal of Fidelity Insurance, Trust & Safe Deposit Co., 115 Pa. 157; Braddock Trust Co. v. Guarantee Trust & Safe Deposit Co., 180 Pa. 529.

The decree of the court below vacating and setting aside the appraisement is reversed, and the decree of May 9, 1892, confirming the appraisement, is reinstated and it is ordered that the costs of this appeal be paid by the appellee.