## Falvey's Estate.

*Israel Krohn*, for petitioner; *Frank P. McCluskey*, contra.

STEWART, P. J., September 29, 1930.—Michael T. Falvey died on February 10, 1927, leaving a will, of which he appointed John W. Falvey executor. John W. Falvey having died, the Lafayette Trust Company was appointed administrator *c. t. a.* on November 7, 1928, and on July 18, 1930, it filed its final account. Michael T. Falvey, in his will, gave and devised all his personal property absolutely to his wife, Agnes D. Falvey. The appraisement showed that his personal property amounted to $141.55, and his real estate was appraised at $11,000. In his will he further gave a one-half interest in his real estate to his said wife, Agnes D. Falvey, absolutely, and gave her the other half interest in his estate during her life or until her remarriage. Upon her death or remarriage, the executor was to sell the real estate, and one-fourth of the proceeds went to his sister, and the other quarter went to a number of relatives.

The widow, Agnes D. Falvey, on December 23, 1929, was married to Arthur Beaver, and after her remarriage the real estate was sold and the proceeds are in the hands of the Lafayette Trust Company. On June 20, 1930, she filed her claim in the orphans' court as follows:

"To Lafayette Trust Company, Administrator *d. b. n. c. t. a.* of the Estate of Michael T. Falvey, late of City of Easton, in the County of Northampton and State of Pennsylvania, deceased.

"I, Agnes D. Beaver (nee Falvey) Widow of said Deceased, do elect to retain hereinafter-mentioned Personal Property of said Deceased, to the value of Five Hundred Dollars, and request that the same be appraised and set apart, according to law.

"(Signed)    AGNES D. BEAVER."

Then followed the oath of two appraisers and their return that they had appraised her "cash $500." This whole proceeding is entirely irregular, and the blank that was used was one that was intended for a case where there was an actual appraisement of chattels for the widow. The twelfth section of the Fiduciaries Act of 1917 provides for a widow's exemption out of either real or personal property, or out of the proceeds of either real or personal property. Careful practice requires that the paper filed set forth what the widow is claiming, because the same section requires appraisers to be appointed by the court when real estate is to be appraised. That appraisement was confirmed *nisi* on July 14, 1930. On July 21, 1930, the legatees in the will filed formal exceptions to the widow's claim. To these exceptions claimant filed an answer sworn to by her. No depositions were taken, but there is nothing in the answers that contradicts the fact of her remarriage, which is what defeats her present claim.

The first exception is: "The right of widow's exemption has been waived by her gross laches, as she failed to claim the exemption within a reasonable time after the decedent's death, which occurred on February 10, 1927."

It is unquestionably true that claimant's laches will defeat her right to claim the exemption. The only claim that we can take cognizance of is the one made June 20, 1930, and that was over three years after her husband's death. There is no proof that she made a proper claim to either John W. Falvey in his lifetime or the Lafayette Trust Company. She herself would be incompetent to establish the fact: Wilson's Estate, 297 Pa. 348. That she took under her husband's will is established from her failure to elect to take against it within two years: Minnich's Estate, 288 Pa. 354. She took under the will, and by its terms she was to get all the personal property absolutely and the use of the real estate until her remarriage. She had that use. The authorities as to what constitutes laches are very conflicting. In Kerns's Appeal, 120 Pa. 523, Mr. Justice Green discusses the subject of delay, commencing on page 528, and refers to many cases. His conclusion is found on page 531, as follows: "Without prolonging the discussion, we decide now that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to the right and conclusive evidence of a waiver." It will be noted that that is as emphatic as words can make it. He said "it is fatal to the right and conclusive evidence of a waiver." In Clark's Estate, 275 Pa. 506, 508, Mr. Justice Simpson said: "It may now be considered as established by Kerns' App., 120 Pa. 523, and Machemer's Est., 140 Pa. 544,—the earlier conflicting authorities being overruled therein,— that if there has been no sale of the property allotted to a widow, an award of exemption to her may be set aside, on due application, if she had remarried 'before her election was made' or if there was 'a delay of a year in claiming her exemption,' " thus again putting the seal of the approval by the Supreme Court on a fixed period of time. In Snider's Estate, 4 Dist. R. 458, President Judge Stewart, of Franklin County, afterwards a member of the Supreme Court, said: "Had the demand for the appraisement been delayed more than three years after the death of Hiram Snider, we would have been compelled, under the authority of Kerns' Appeal, 120 Pa. [523] 531, to withhold confirmation. That case decides that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to her right and conclusive evidence of a waiver. It affords no authority, however, for holding that such legal conclusion follows any shorter period of delay.

There may be cases where continued delay, though short of the three years, will work a forfeiture of the right to the exemption, but, whenever this results, there will be found other circumstances contributing. Here the delay was for two and a-half years, but under circumstances which ought not to prejudice the widow's claim. Her delay disappoints no one." Here it is evident that he was impressed by the time limit. A few years afterwards, the same learned judge, in Lane's Estate, 6 Dist. R. 618, said: "There is no definite period within which the demand for the appraisement is to be made. It is sufficient if it be made before the situation with respect to the estate has been so changed as that expense and embarrassment would result from allowing the claim. In the present case, whatever delay there was has been without prejudice to the estate or any one's interest in it." We apprehend that the latter opinion states the true rule as to delay, but in all the opinions it is said the case is to be determined upon equitable considerations. In Kerns's Appeal, *supra*, it is said the provision is for the "temporary wants of her family." That is plainly what was intended. This present demand rests on no such foundation, and is contrary to the express intention of the testator. To now allow it would disturb his disposition of the proceeds of the real estate as expressed in his will, to the prejudice of the other legatees under conditions which would make the exemption a pure gift after the widow had received her support from her second husband. Where the circumstances are as they exist in this case, a delay of over three years in making the claim, and after the property has been sold, defeats her claim on the ground of laches. However, the conclusive exceptions are the sixth and seventh, as follows: "Sixth: That at the time claim for widow's exemption was made the claimant was no longer the widow of the said Michael T. Falvey. Seventh: That the said claimant remarried before making her election or before claiming her widow's exemption." The twelfth section of the Fiduciaries Act, *supra*, follows section five of the Act of April 14, 1851, P. L. 612, and its amendments. That section provides: "The widow, . . . may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to said estate, to the value of five hundred dollars; and the property so retained or claimed shall not be sold, but suffered to remain for the use of the widow or children." The words of the act are "the widow . . . may retain or claim." In the early case of Kerns's Appeal, *supra*, the syllabus is: "The right of a widow, under § 5, act of April 14, 1851, P. L. 613, to retain of the real or personal estate of her deceased husband to the value of $300, does not vest at the death of her husband, but only when she has elected to exercise the right. . . . What a widow may take under said act she takes in her character as widow, as a provision for the temporary wants of her family; wherefore, if she re-marry before making her election her right no longer exists: Burk v. Gleason, 46 Pa. 297, approved; Commonwealth v. Powell, 51 Pa. 438, and Shumate v. McGarity, 83 Pa. 38, explained." Mr. Justice Green wrote the opinion. After referring to the words in the Act of 1851, *supra*, which are the same as in the Act of 1877, he said: "The right is a privilege to retain, and not an absolute transfer, of a part of the estate. And it is manifestly a provision for the temporary wants of the widow and family, and may be claimed by the children if there is no widow. What she takes she takes in her character as widow, and this being so, she ought to fulfill the condition of the statute when she does make her claim. That is, she ought to be at that time the person who is qualified by law to exercise the right, to wit, the 'widow' of the decedent. She is not his widow if she is then the wife of another man,

and this was held in Commonwealth *v.* Powell, *supra.*" That case was followed in Machemer's Estate, 140 Pa. 544, and Clark's Estate, *supra.* In Alfree's Estate, 22 Dist. R. 486, Judge Lamorelle shows that a widow's claim to exemption is barred by remarriage. The cases that were cited to us under the intestate act, which allows a widow $5000, have no bearing in the present controversy because, under the intestate act, a widow's interest vests immediately on her husband's death, while under the exemption act there is no vesting upon death. We have discussed the difference at some length in Styers's Estate, 14 Northamp. Co. Repr. 327, 42 Pa. C. C. 623. There is no analogy between the two cases. It is also contended in the brief that the present matter should be determined by an auditor. Our rules of court provide:

"Sec. 260. Every appraisement of property retained by the husband or widow of a decedent, under the Exemption Act, shall be presented in open court on a stated orphans' court day when the same will be confirmed nisi. The clerk of the orphans' court shall thereupon give notice of the filing of said confirmation by advertisement in the Northampton County Reporter and in one newspaper of general circulation published in the County of Northampton for two weeks, and if no exceptions are filed within fifteen days after said presentations, said appraisement shall be confirmed absolutely without further order.

"Sec. 261. The appraisement shall be copied at length by the clerk in the book kept by him for the recording of accounts. If the property retained be real estate, the appraisement shall contain a description of the quality, location, and boundaries of the same in such manner as to preclude all difficulty as to its identification. The executor or administrator shall be allowed credit in his account for all reasonable expenses incurred in the presentation and recording of said appraisement."

In Weber's Estate, 11 Northamp. Co. Repr. 151, we discussed in a general way the practice. In that case the widow had certain personal property appraised to her, and the balance was awarded to her in cash. There was no such question arising in the present case. In Sellers's Estate, 82 Pa. 153, $48 of personal property was awarded to the widow. The administrator paid the balance, $252, in cash to her. A guardian of minor grandchildren excepted to the cash payment to the widow. An auditor was appointed on the account. The lower court held that her claim for the cash should have been included in the appraisement. In reversing the case the Supreme Court succinctly said that the purpose of the appraisement was confined to personal property such as chattels, and that if there was positive evidence that a claim for the balance of the appraisement in cash had been made, the mere fact that there was no mention of it in the appraisement would not defeat the claim. To the same effect is Hollinger's Estate (No. 1), 259 Pa. 72, a case arising under the Act of April 1, 1909, P. L. 87. The result of the matter is that where there are no chattels it is not absolutely necessary to have any appraisement, but it is better practice to follow the rules, as the appraisement properly signed affords conclusive evidence of the making of the claim, and it would prevent suits against an executor or administrator for neglect or refusal to make the appraisement. See Compher *v.* Compher et al., 25 Pa. 31. It is needless to say that this claim, having now been adjudicated, cannot be passed on by an auditor already appointed in the estate.

And now, September 29, 1930, all above quoted exceptions are sustained, and the claim of Agnes D. Beaver (nee Falvey) for exemption is disallowed.

From Henry D. Maxwell, Easton, Pa.