# APPEAL OF MICHAEL KERNS AND WIFE.
# [ESTATE OF JOHN NILAND, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF SCHUYLKILL
COUNTY.

Argued February 15, 1888—Decided May 25, 1888.

1. The right of a widow, under § 5, act of April 14, 1851, P. L. 613, to retain of the real or personal estate of her deceased husband to the value of $300, does not vest at the death of her husband, but only when she has elected to exercise the right.

2. A delay for over three years, on the part of a widow, to assert her claim under said act, is fatal to the right and conclusive evidence of her waiver of it.

3. What a widow may take under said act she takes in her character as widow, as a provision for the temporary wants of her family; wherefore, if she re-marry before making her election her right no longer exists: Burk v. Gleason, 46 Pa. 297, approved; Commonwealth v. Powell, 51 Pa. 438, and Shumate v. McGarity, 83 Pa. 38, explained.

4. When the court below has refused to reconsider and vacate a decree confirming a widow's appraisement, on the petition of a person interested in the property set apart, this court, on sufficient reason for attacking its validity, has jurisdiction to entertain an appeal and to dispose of the case on its merits.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 38 July Term 1886, Sup. Ct.

On March 2, 1885, Michael Kerns and Ellen, his wife, in right of said wife, presented a petition to the Orphans' Court, praying that a decree confirming the report of appraisers of the widow's exemption, filed in the estate of John Niland, deceased, should be reconsidered, vacated and set aside, and a rule was granted accordingly.

At the hearing on June 29, 1885, it appeared that John Niland died on April 7, 1870, leaving to survive him a widow, but no issue, and seised of two adjoining lots of ground with dwelling houses thereon, in Mahanoy city. He had left a will

in which he bequeathed and devised all his personal property and one of the lots with the dwelling thereon to his wife Hannah Niland, "during the whole term of her natural life or so long as she remains my widow," and upon her death or re-marriage, whichever first might happen, he devised said house and lot to his sister Margaret Hoben; the other house and lot with the dwelling thereon was devised absolutely to his sister Ellen Kerns. His wife was appointed the executrix of the will.

On April 15, 1880, the widow filed a caveat against the admission of said will to probate, but on November 20th she withdrew her opposition and allowed the will to be admitted to probate. On January 8, 1882, she was married to John Murphy, and on March 4th, following, she took out letters testamentary as the executrix of the said will.

After taking out letters, Mrs. Niland, then Mrs. Murphy, continued to collect the rents of the house devised to Mrs. Kerns, and on September 10, 1883, Mrs. Kerns began an action of ejectment against her to recover possession of the premises. On September 24, 1883, Mrs. Murphy caused to be filed in the Orphans' Court a paper containing an election to retain the thereinafter personal and real property of the deceased, to the value of $300, and requesting that the property designated be appraised and set apart to her as the widow of said deceased according to law. This election, dated September 8, 1883, was followed by a sworn appraisement of the same date by three appraisers, of personal property to the amount of $27, and of the two lots of ground with the dwellings thereon, at $250. No exceptions being filed to said appraisement, on November 12, 1883, after due notice given by advertisement, with other like appraisements, it was confirmed. Afterwards, on December 17, 1883, on petition of Mrs. Murphy, over the name of Hannah Niland, showing said proceedings, the court ordered and decreed that the appraisement and the appropriation of said real estate described therein " be and remain firm and stable to the said Hannah Niland, her heirs and assigns forever," etc. The petition filed on March 2, 1885, averred that Mrs. Kerns, the petitioner, never had any knowledge of said appraisement, or that it included the real estate devised to her, until February 21, 1885; and further: "Deponent has

been informed and believes that instead of the personal estate of decedent amounting to twenty-seven dollars, that in addition to all furniture and other personalty, there has come into the hands of said widow and executrix upwards of six hundred dollars in cash, and that the said real estate appraised at the sum of two hundred and fifty dollars is undoubtedly of the value of at least one thousand dollars. Deponent therefore saith that said appraisement, of which she never had any knowledge until within 48 hours, is fraudulent as to her and is also a fraud upon the court which confirmed the same."

The court, without opinion filed, discharged the rule granted, and thereupon the petitioners took this appeal assigning as error the confirmation of the report of the appraisers and the refusal to vacate said decree and proceedings and declare them null and void.

*Mr. James Ryon* (with whom were *Mr. M. M. L'Velle* and *Mr. Henry C. Terry*), for the appellants:

1. The widow, having a full knowledge of the disposition of his real property by the testator, elected to take under the will. She cannot now defeat the bequest of the house and lot to Mrs. Kerns, by taking the whole of the real estate as an exemption: Maier's Estate, 1 Pears. 420; Cox v. Rogers, 77 Pa. 160; Preston v. Jones, 9 Pa. 456; Light v. Light, 21 Pa. 407; Hamilton v. Buckwalter, 2 Y. 389; Cauffman v. Cauffman, 17 S. & R. 16; Taylor v. Birmingham, 29 Pa. 306. The devise to the wife, " so long as she remains my widow," was strictly a conditional limitation marking the extent of interest given, against the terms of which equity cannot relieve. Such estate is consequently terminated by a subsequent marriage, even without entry by the heir or devisee over: Bennett v. Robinson, 10 W. 348; Irvine v. Sibbetts, 26 Pa. 477; 4 Kent, Com., 126; Rodgers v. Rodgers, 7 W. 15; Dale v. Dale, 13 Pa. 446; Mickey's Est., 46 Pa. 337; Hotz's Est., 38 Pa. 422.

2. By her re-marriage and delay in proceeding to have the exemption set aside to her during her widowhood, Mrs. Niland must be held to have waived the right. At the time the proceedings were commenced and concluded, she was not the widow of John Niland. The term, widow, is descriptive of one in an unmarried condition, after she has once been married:

Commonwealth v. Powell, 51 Pa. 440. A widow who is re-married before she claims the exemption, is not a widow, within the meaning of the statute, and is not entitled to the exemption: Burk v. Gleason, 46 Pa. 297; Shumate v. McGarity, 83 Pa. 38. Moreover, the appraisement was not had until three and a half years after the testator's death, and a year and nine months after the widow was married to John Murphy. This delay of itself was fatal to her claim: Davis's App., 34 Pa. 256; Van-devort's App., 43 Pa. 465; Hufman's App., 81 Pa. 331; Neff's App., 21 Pa. 243; Baskin's App., 38 Pa. 65.

*Mr. James B. Reilly* (with him *Mr. James F. Grady*), for the appellee:

1. That the action of the court below, in refusing to open or set aside the judgment entered by it, is not a subject matter of review on error, or appeal, is so positively settled by repeated decisions of this court as to place it beyond controversy. And here, the complaint is not as to any irregularity or error com-mitted by the court when the decree was made, but the com-plaint is as to the refusal of the court to set aside the decree upon application subsequently made: Runyan's App., 27 Pa. 121; Sipes v. Mann, 39 Pa. 414; Herr v. Herr, 5 Pa. 428; Kep-ner's App., 94 Pa. 74; White v. Leeds, 51 Pa. 187; Ringwalt v. Brindle, 59 Pa. 51; Bunce v. Wightman, 29 Pa. 335; Mc-Kee v. Sanford, 25 Pa. 105; Wernet's App., 91 Pa. 319; Kneedler's Appeal, 92 Pa. 428.

2. Whether, in this case, the widow elected to take under the will or not, how can it affect her right to the benefits of the exemption law? The right of a widow to retain real or per-sonal property to the amount of $300 from the estate of her deceased husband, is given by § 5, act of March 14, 1851, P. L. 613, whether her husband die testate or intestate. So much of the estate belongs to her and her children, if she have any, for the use of the family. If she have no children, it is hers ab-solutely: Compher v. Compher, 25 Pa. 31; Farrell's Est., 4 W. N. 383.

3. The fact that the widow was married again when the ap-praisement was held, does not and should not defeat her right. The case is to be distinguished from Burk v. Gleason, 46 Pa. 297, though it is not even in that case decided that a marriage

forfeits the right to claim the exemption. And it is said in Commonwealth v. Powell, 51 Pa. 441: "And for the same reason, too, I presume it is, that the right to retain $300 out of the estate of her husband exists, although before doing so a second marriage may have taken place. Whenever a right by law has attached by reason of widowhood, there must be some law by reason of which it is divested, or it will remain; and this is a sufficient answer to the argument that by the laws referred to, a woman, though a second time married, has her rights awarded to her as a widow still." The doctrine of Commonwealth v. Powell is seemingly approved in Shumate v. McGarity, 83 Pa. 38. And see Detweiler's App., 44 Pa. 243.

OPINION, MR. JUSTICE GREEN:

John Niland died in April, 1880, having made a will in May, 1879, and leaving a widow, but no issue. He was seised of two lots and two dwellings erected thereon, one of which he devised in fee to his sister Ellen Kerns, the appellant, and the other to his widow for life, with remainder in fee to his sister Mrs. Hoben. The widow filed a caveat against the probate of the will, which was pending until March 4, 1882, when it was withdrawn and letters testamentary were issued to her. The widow continued to collect the rents of the real estate, including the part devised to Mrs. Kerns, until September 10, 1883, when Mrs. Kerns brought an ejectment against her for the house and lot devised to her. After this, on September 24, 1883, an appraisement was filed in the Orphans' Court, whereby it appeared that the widow had, on September 8, 1883, signed a paper declaring that she elected to take under the widow's exemption law certain personal estate appraised at $27 and also the house and lot devised to Mrs. Kerns, appraised at $250. This appraisement, filed on September 24, 1883, was confirmed absolutely on November 12, 1883. On March 2, 1885, Mrs. Kerns presented a petition to the Orphans' Court setting forth that the real estate devised to her was worth at least $1,000; that she had endeavored to get possession of it, but not succeeding had brought an action of ejectment to recover it, which was still pending; that on February 21, 1885, she first learned that on September 14, 1883, the widow had caused to be appraised and set apart to

her the land in question: that she never before had any knowledge of that proceeding; that the widow had acquired some $600 in cash, in addition to the personal estate appraised, and that the appraisement was a fraud upon her and upon the court. She asked for a rule to show cause why the appraisement should not be set aside and the confirmation reconsidered, opened, and set aside. The rule was granted, but finally discharged without an opinion. From this decree the present appeal was taken.

As the application for redress was made in the proceeding itself, it cannot be said to be a collateral impeachment of the decree of confirmation, and, if the reason for attacking its validity is sufficient, we think we have jurisdiction to entertain the appeal and dispose of the case on its merits.

The main ground upon which the confirmation of the appraisement is contested is, that the widow's right of election was waived by her gross laches and by the fact of her subsequent marriage before her election was made. We did decide expressly in Burk v. Gleason, 46 Pa. 297, that a widow who claims her statutory allowance under the act of April 14, 1851, must make her claim within a reasonable time after her husband's death, and that she cannot claim it after the lapse of several years and a second marriage. Some question has been made in two of our subsequent decisions as to the strict correctness of this conclusion so far as the effect of the second marriage is concerned : Commonwealth v. Powell, 51 Pa. 438, and Shumate v. McGarity, 83 Pa. 38. In the first of them the question did not arise, but we held in another connection that if a widow's rights, as widow, in her husband's property, had once vested, they were not lost by the fact of a subsequent marriage. In the same case, however, we held that a widow is a woman who has lost her husband and remains unmarried. In that case a bequest was made by the testatrix to her daughter-in-law, the widow of her son. The legatee married again before the death of the testatrix, and it was held that she was not the widow of the son when the legacy vested, and, although she could take the legacy, being specially named, she was bound to pay the collateral inheritance tax, because she did not come within the class of exempts from the duty to pay the tax, to wit, " the wife or widow of a son of any person

dying seised or possessed thereof." In the course of the opinion, THOMPSON, J., says, obiter dictum: "And for the same reason, too, I presume it is, that the right to retain $300 out of the estate of her husband exists, although before doing so a second marriage may have taken place." In the second case above cited, our brother, the present Chief Justice, remarked incidentally, in speaking of Burk v. Gleason, that we are much inclined to doubt the correctness of the conclusion there reached, but the question was not before us, as the widow in that case had not re-married, and her right to elect did not arise under the act of 1851. But, in both of these cases, it was held that a delay of seven years in the first, and fourteen years in the second, was such gross laches as to amount to a waiver of the right, and that the right had no existence at the time it was claimed to be exercised.

In the present case the delay was for almost three and a half years. In the meantime, no election by the widow having been made, the appellant had brought her action of ejectment to recover the land devised, and, of course, had incurred expense in doing so. Nothing appeared of record to show that the widow intended to elect to take her exemption. Although the paper in which she declared her election bore date on September 8, 1883, two days before the writ of ejectment was issued by the appellant, it was a mere private paper in the possession of the widow, and was no notice to the appellant. Nor was any notice ever given to the appellant of the widow's election. The fact of her election first appeared upon the record of the Orphans' Court on September 24, 1883, more than three years and five months after her husband's death. We have no hesitation in deciding, as we now do, that this was gross laches on the part of the widow in exercising her right of election to take the benefit of her exemption, and operates as conclusive proof of a waiver of her right.

There is no reason for any serious delay in the exercise of a widow's right of exemption, because she is entitled to it, whether her husband has died testate or intestate, and in this respect it differs from her election to take under his will. In the latter case she needs time enough to inform herself as to the condition of the estate, before making her election, and she is allowed one year in which to do so by the express pro-

visions of a statute. While we do not mean to say that she should be allowed so much as one year in which to claim her $300 exemption, the analogy of the statute which subjects her to a compulsory citation to elect as against a will, at the expiration of twelve months from her husband's death, admonishes us that a delay of a year in claiming her exemption is gross laches, and in itself evidence of a waiver of her right. In Vandevort's Appeal, 43 Pa. 462, we said: "The widow's law of 1851 contemplates a prompt and finished proceeding on her behalf, immediately after the administrator has qualified himself to act." In Davis's Appeal, 34 Pa. 256, we held that "the right of a widow to retain real or personal property of her deceased husband's estate to the value of $300, is a personal privilege no less than is that of a debtor to retain against an execution creditor. Of course it may be waived, and it is waived entirely, when she neglects to demand an appraisement." We also held, that "a claim of exemption by a debtor would be too late after such proceedings (a partial election and a subsequent attempt to claim the whole), and the act of 1851 is to receive a construction similar to that given to the act of 1849." In Hufman's Appeal, 81 Pa. 329, we said, the present chief justice delivering the opinion, "So, in like manner, in Davis's Appeal, 34 Pa. 256, it has held, inter alia, that a widow by neglecting to demand an appraisement waived her right entirely to the $300 allowed her by the act of 1851. In that case it is said that that act is to receive a construction similar to that given to the act of 1849; that the widow's rights under the statute are sub modo only, that she can obtain the property only in the manner directed by the statute. A similar ruling is found in Neff's Appeal, 21 Pa. 243, wherein it is said by LEWIS, J., that the act of 1851 was intended to give the widow and children what the debtor himself enjoyed in his lifetime under the act of 1849; that both statutes had relation to the same subject and differed only in designating the individuals intended to be protected; hence the rule of construction that statutes in pari materia are to be construed with reference to each other, must prevail in these exemption cases." Of course, if the right of a widow is to be exercised similarly to that of a debtor, it is idle to discuss the question whether a delay of a year is not a fatal delay. Nothing like such delay

would or could be tolerated in the case of a debtor. Without prolonging the discussion, we decide now that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to the right and conclusive evidence of a waiver.

This view disposes of the present case, and requires its reversal, but we also think that the widow, having re-married before she claimed her exemption, her right was gone. If the right to the exempted property was an absolute one, which vested immediately upon the husband's death, without any action on her part, it would not be divested by her subsequent marriage. But such is not the case. Her right to have any exempted property depends entirely upon her claiming it. If she does not claim it, she never has it. If she neglects unduly to make her claim she loses her right to do so. The language of the statute, § 5, act of April 14, 1851, P. L. 613, is : " The widow or the children of any decedent dying within this commonwealth, testate or intestate, *may retain* either real or personal property belonging to said estate to the value of three hundred dollars, and the same shall not be sold, *but suffered to remain* for the use of the widow and family," etc., and then follows the provision for appraisement in the manner required by the act of 1849. The right is a privilege to retain, and not an absolute transfer, of a part of the estate. And it is manifestly a provision for the temporary wants of the widow and family, and may be claimed by the children if there is no widow. What she takes she takes in her character as widow, and this being so, she ought to fulfil the condition of the statute when she does make her claim. That is, she ought to be at that time the person who is qualified by law to exercise the right, to wit, the " widow " of the decedent. She is not his widow if she is then the wife of another man, and this was held in Commonwealth v. Powell, supra.

> The decree of the court below is reversed; the confirmation of the widow's appraisement made March 12, 1883, is vacated and set aside, and the appraisement and all proceedings under it are adjudged null and void, the costs of the present proceeding and of this appeal to be paid by the appellee.