# Estate of Erastus Potter, deceased.   Appeal of Le Grand Wells.

*Contracts with the aged—Scrutiny and policy of law.*

The law is especially solicitous and careful of childhood and old age. The rights of the latter are to be guarded with as much of carefulness and solicitude as the former. A contract, made with an aged woman, who is unadvised as to her rights, a waiver of which is imputed from the execution of such contract, will be closely scrutinized and strictly construed in her favor.

*Mistake of law — Equity will relieve when mixed with imposition or fraud.*

Where with a mistake in law, there is found mixed up other ingredients showing misrepresentations, stating that which is not true or concealing that which ought to have been made known, where imposition, undue influence, mental incapacity or surprise are established, relief will be afforded to one who has thus been imposed upon and induced to do that which is contrary to equity to maintain.

*Widow's exemption—Waiver obtained by undue influence—Equity.*

A paper purporting to be a waiver of a widow's right to exemption executed by an aged widow in ignorance of her rights and of the significance of the paper at the solicitations of her husband's creditor without advice or opportunity to seek advice, will not be permitted to interfere with her rights to claim the benefit of the act of 1851.

*Widow's exemption—Waiver of—Laches.*

There can be no fault or laches committed by a widow as to claiming her exemption until she has knowledge of her rights, and there is a proper officer from whom she can claim it or until she can compel the appointment of such an officer. An ignorant, aged and illiterate widow had no knowledge of her right to the exemption until several years after her husband's death. Her claim for exemption was presented to the administrator eighteen days after letters issued. *Held*, that there was no laches.

Argued Jan. 17, 1898. Appeal, No. 28, Jan. T., 1898, by Le Grand Wells, from decree of O. C. Susquehanna Co., Aug. T., 1897, No. 53, in the matter of exceptions to widow's inventory. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Exceptions to widow's inventory and appraisement. Before SEARLE, P. J.

It appears from the auditor's report that Erastus Potter died

628 POTTER'S ESTATE.

Statement of Facts—Assignment of Errors. [6 Pa. Superior Ct.

January 20, 1893, testate, bequeathing and devising all his property to his widow, Jenett Potter. His property consisted of some personal property and thirty-three acres of land. The widow continued to reside on and receive the income of said property until after the real estate was sold by the administrator of said estate, March 30, 1896. The will was duly probated December 7, 1893.

· The principal debts of the decedent were three judgment liens to Le Grand Wells and one judgment lien to G. G. Wells. After the probate of the will Le Grand Wells, one of the lien creditors, called on the widow and she signed a revival of judgment and a waiver of her right to claim the widow's exemption, giving him at the same time a note for $339.05 for a debt she, individually, owed him and revived one of the estate judgments, as terre-tenant and owner of the real estate of said decedent by last will.

In January, 1896, the widow and her coexecutor renounced the right to administer, and an administrator c. t. a. was appointed. On February 6, of the same year an order of sale was issued by the orphans' court to the administrator to sell the real estate of the decedent for the purpose of paying the judgments against it. On February 3, 1896, the widow elected to take $300 exemption out of the real estate of her deceased husband, which was duly appraised, and $300 awarded to the widow as her exemption out of and from the same.

Other facts appear in the opinion of the court.

The auditor sustained the exceptions to the widow's inventory and appraisement, and ordered distribution to the lien creditors only, as a matter of law, holding that the fact, that the widow remaining silent for upwards of three years after the death of her husband, and making no claim for her exemption, is a conclusive proof of a waiver of her right to the same.

The court below sustained exceptions to the auditor's report, touching confirmation of the widow's inventory and confirming the said inventory finally. Le Grand Wells, a lien creditor, appealed.

*Errors assigned* among others were (1) in refusing to confirm the auditor's report. (2) In sustaining exceptions thereto and confirming the widow's inventory.

*T. J. Davies*, for appellant.—A delay of over three years on the part of the widow in exercising her right of exemption is gross laches and operates as a conclusive proof of a waiver of her right: Kerns' Appeal, 120 Pa. 523.

Numerous cases can be cited that hold that a party claiming exemption must not allow expense and cost to be made before making their claim: Williams' App., 92 Pa. 69; Miller's App., 16 Pa. 300.

The authorities are numerous that hold that an extension of time or forbearance is sufficient consideration for an agreement: Hesser v. Steiner, 5 W. & S. 476; Giles v. Acklec, 9 Pa. 147; Gorder v. Bank, 7 Atl. Rep. 144; Horner v. Jones, 6 Phila. 258.

A contract of a married woman to pay the debts of her husband creates a moral obligation: Holden v. Banes, 140 Pa. 63.

Possession by a widow of the real estate devised to her is evidence of an election under the will: Zimmerman v. Lebo, 151 Pa. 345.

Mere ignorance of the law will not relieve her from the effect of acceptance under the will: Light v. Light, 21 Pa. 407.

Where a widow accepts part of a bequest under a will, she is estopped from afterwards claiming her exemption, where it injures other beneficiaries: Maier's Est., 1 Pearson, 420.

The widow's inventory should not be confirmed, and money awarded to the widow, for the following reasons: (1) because the widow did not make her claim for exemption in a reasonable time; (2) because she waived the right of exemption in writing under seal; (3) she is estopped from claiming her exemption, because she accepted and elected to take under the terms of the will of her husband; (4) because the widow failed to proceed and claim her exemption under the provisions of the act of November 27, 1865, and as therein provided; (5) because judgments No. 92, January term, 1894, and No. 91, January term, 1894, became liens upon the real estate described in her inventory, prior to making claim for her exemption, by virtue of her acceptance under the will of her deceased husband.

*A. B. Smith, Jr.*, for appellee.—The relation between the contracting parties appears to be of such a character as to render it certain that they did not deal on equal terms and the transac-

tion is pronounced void.    It is incumbent on the party in whom such confidence is reposed to show affirmatively that no deception was used, and that all was fair, open, voluntary and well understood: Stepp v. Frampton, 179 Pa. 284.

Allowance has been had of a widow's exemption after a period longer than three years : Cocker's Est., 1 Dist. Rep. 81.

The laches of the widow, if any, in this regard, are excused by the circumstances : Kirchner's Appeal, 6 Dist. Rep. 138; McWilliam's App., 117 Pa. 111.

OPINION BY BEAVER, J., February 19, 1898 :

The facts of this case are peculiar, and its determination must rest upon those facts.    They are very fully stated in the opinion of the presiding judge in the court below, and need not be specially recounted here.

The law is especially solicitous and careful—and rightly so —of childhood and old age.    The rights of the latter are to be guarded with as much of carefulness and solicitude as the former.    As the time approaches for the passage into what we call second childhood, which is practically as helpless as early childhood, there is no reason why the law should not exercise discriminating care in regard to transactions made with persons in the one class as in the other, and why it should not throw the same protection around both.

Eliminating from the consideration of the case the testimony in regard to misrepresentations which would amount to fraud, and threats which would amount to duress, which is not wanting, but which doubtless, on account of the age of the one witness and the youth of the other, was eliminated from the consideration of the case, both by the auditor and the court below, and which is in part at least denied, it clearly appears by the testimony of the appellant himself and from other testimony entirely undisputed, that the appellant came into the home of a widow woman who had reached the three score years and ten usually allotted to man, nearly a year after the death of her husband, when she and her granddaughter, about thirteen years of age, and a small boy, of ten or eleven years of age, were the only persons present—the man of the house, another grandson, a youth in his teens, being absent—with three papers previously prepared for her signature.    One of these was the re-

vival of a judgment obtained against her husband in his lifetime, in which she described, or is made to describe herself, as " terre-tenant and owner of the real estate of said decedent by last will ; " another, a judgment note for three hundred and thirty-nine and $\frac{5}{100}$ dollars, with five per cent commission, and the other a paper purporting to be a waiver of her right to exemption from or out of the real estate of the decedent. None of these papers was read to the widow nor did she read them, for the reason probably, as she says, that she " could not read writing to amount to anything." It is alleged, both by the widow and her granddaughter, that she asked to have them read and objected to signing anything which she did not understand. It is clearly apparent that she was not only entirely ignorant of the contents of the papers which she signed, but that she was also ignorant of her rights as a widow. It nowhere appears in the testimony of the appellant, or elsewhere, that there was any agreement as to the extension of time for the payment of the debts of the deceased husband for any definite period. It would seem, therefore, as if the indefinite statement contained in the agreement waiving exemption had been inserted for the purpose of giving an apparent consideration for the execution thereof. Shortly after the execution of this paper, she became aware in some way of her rights as widow under the act of 1851, and some two years thereafter and eighteen days after the issue of letters of administration c. t. a., she presented her petition or election to have set aside and appraised to her, as her widow's exemption, the sum of three hundred dollars out of said decendent's estate, and elected to take the same from the real estate therein described. Appraisers were appointed, who returned that the real estate was of greater value than three hundred dollars, and could not be divided so as to set apart a portion thereof, to the amount of three hundred dollars, as the widow's exemption. Exceptions were filed to this appraisement and, upon the confirmation thereof by the court, this appeal was taken.

In Whelen's Appeal, 70 Pa. 410, this general principle, approved by the Supreme Court, is laid down: " It is clearly settled that where, with a mistake in law, there is found mixed up other ingredients showing misrepresentations, stating that which is not true or concealing that which ought to have been made known, where imposition, undue influence, mental inca-

pacity or surprise are established, relief will be afforded to one who has thus been imposed upon and induced to do that which it is contrary to equity to maintain." It is therein also held "that, when a party has acted under a misconception or ignorance of his title, and has executed an agreement or conveyance to his prejudice, he will be relieved in equity." The latter principle is quoted in Wilson v. Ott, 173 Pa. 253. See also Russell's Appeal, 75 Pa. 269.

Applying these principles to the facts of this case, we are clearly of opinion that the confirmation of the widow's appraisement should stand, and that the paper writing purporting to be a waiver of her right to exemption, having been executed in ignorance of its contents, which should have been communicated to her, and in ignorance of her rights as a widow, when she had no one with whom to advise,—her age, her failing memory and the other circumstances attending the execution of the papers being considered,—should not be allowed to interfere with her right to claim the benefit of the act of 1851, commonly called the widow's exemption act.

Was she guilty of laches in making this claim? Under the circumstances, for the reasons fully and clearly stated by the court below, we think not. The will was not in the possession of the widow. It was not produced for a year after the death of her husband. Practically the entire personal estate had been exhausted in the payment of preferred debts. After the probate of the will, the appellant had the same right to require the issue of letters as had the widow to take them. It does not appear that he suffered by the delay, or that he incurred any expense in consequence thereof. On the other hand, the widow, by her agreement to the revival of the judgment obtained against the husband in his lifetime, prevented the accumulation of costs. She made her demand upon the administrator c. t. a., eighteen days after the issue of letters to him. This case is easily distinguished, by its facts, from Kern's Appeal, 120 Pa. 523. See Williams' Estate, 141 Pa. 436.

Her election to take, under the terms of the will of her deceased husband, did not prevent her claim for the benefit of the exemption law, even if such election had been made in a way which was binding upon her: Peebles' Estate, 157 Pa. 605. The widow's application was not made under the pro-

visions of the Act of November 27, 1865, P. L. (1866) 1227—
and the provisions of the said act did not, therefore, apply to
the proceedings in this case.

The judgment against the husband revived against the widow
as terre-tenant, and that against her were liens only upon her
estate as devised under the will. They did not bind her inter-
est under the exemption law, as widow, which was not real
estate and which did not attach, until her claim was made.

The assignments of error are all overruled, the decree of the
court below is affirmed, and the appeal dismissed, at the costs
of the appellant.