## Crider's Estate

*A. J. White Hutton*, for exceptant; *George W. Atherton*, contra.

DAVISON, P. J., August 4, 1933.—William S. Crider died intestate May 3, 1926, leaving to survive him a widow, Mary E. Crider, and one daughter, Emma A. Crider Ewan. At the time of his death, decedent was seized of a piece of real estate located in Guilford Township, on which his mother, Elizabeth Crider,

resided. There was no estate of said William S. Crider except this piece of real estate at the time of his death. No letters of administration on the estate of said William S. Crider were taken out until after the death of his mother, Elizabeth Crider, on April 14, 1930. Letters of administration were granted to Mary E. Crider, the widow of William S. Crider, on his estate on June 2, 1930. The real estate of said decedent was sold for the payment of debts by order of this court for $1,550, said sale being confirmed on July 12, 1930. In addition to the sum received for the real estate, said administratrix received from George W. Atherton, Esq., executor of Elizabeth Crider, deceased, the sum of $200 in settlement of a claim presented against the estate of Elizabeth Crider; and these two sums, aggregating $1,750, are the total of the estate of said William S. Crider.

No claim for a widow's exemption was made by Mary E. Crider until July 25, 1931, when a widow's appraisement was filed in this court and disallowed. On September 16, 1932, a claim was made before the auditor for the allowance of the $500 exemption out of the cash of said estate. This claim was disallowed by the auditor on the ground of laches on the part of the widow in making said claim, said William S. Crider having died on May 3, 1926, and the first claim for the exemption having been made on July 25, 1931, more than 5 years after the date of his death.

In the first and final account of said administratrix, she took credit for the payment of certain sums for funeral expenses of the decedent, amounting to $254 paid Kraiss Brothers as undertakers, together with an item of $75 paid to Forbes Granite Company for a tombstone. Exceptions were taken to these two items on behalf of the daughter of said decedent, and they were disallowed by the auditor. Exceptions to this action of the auditor were filed on behalf of Mary E. Crider and are to be disposed of at this time. At the time of his death, William S. Crider was a member of the Wolf Death Benefit Association, and the certificate provided "that the amount so realized to be paid to my widow, to my next of kin, or at the discretion of the Wolf Company for my funeral expenses and debts incurred during my last illness." From this benefit association, said Mary E. Crider received the sum of $161. William S. Crider was also a member of King Richard Commandery, No. 147, of the Knights of Malta; the constitution of that order provides that any sum paid shall be paid to the nearest competent dependent relative, to aid in defraying the expenses of the funeral; and from this commandery Mrs. Crider received the sum of $99.15. The decedent was also a member of Oriole Council, No. 877, Junior Order of United American Mechanics, and from its funeral benefit department Mrs. Crider received a check of $500. William S. Crider was also a member of Quindaro Tribe, No. 55, Improved Order of Redmen; the constitution of that order provides that the appropriation shall go to defray the funeral expenses of the deceased; and from this source Mary E. Crider received the sum of $150. It was held by the auditor that these payments were marked as trust funds for the purpose of funeral expenses, and that the accountant cannot now ask for repayment of the funeral expenses from the general funds of the decedent's estate. These funds were received by Mary E. Crider, the widow, and placed in her bank account, and from that bank account she paid said funeral expenses and tombstone.

The amount received by her and earmarked clearly for funeral expenses was in excess of the $254 paid by her to Kraiss Brothers, and as to that item we hold that the auditor was correct in his conclusion and that the widow cannot receive the credit for this $254, as taken in her account, but must be surcharged with it, as was done by the auditor in his schedule of distribution.

As to the item of $75 for funeral expenses, we do not agree with the conclusion reached by the auditor. There is no authority for including a tombstone among those items referred to as funeral expenses to be paid out of these funds from these associations which were intended for funeral expenses, and we cannot agree with the auditor that the tombstone should be considered part of the funeral expenses to be paid out of these funds. We will sustain the exception insofar as the funeral expense item of $75 is concerned and direct that the accountant be allowed that credit.

The widow filed in the orphans' court of this county an appraisement of $500 in cash for her widow's appraisement after the sale of the decedent's real estate. Exceptions were filed to this appraisement, which exceptions were sustained by the court. When the audit met, the claimant, the widow, relying on the opinion of this court in the estate of David Heckman, deceased, presented her claim before the auditor for $500 in cash on the ground that, the claim being for cash, no appraisement was necessary and the widow could make her claim before the auditor under those circumstances. This contention was correct, and under the opinion filed in the Heckman estate the widow in this estate would have been entitled to her $500 exemption if there had been no question of laches entering into the matter. She had shown her intention to claim this exemption by filing the appraisement in this court, and we must consider the date of her claiming the exemption as of the date when she filed the appraisement in the orphans' court. The fact that the appraisement was not allowed on technical grounds does not change the fact that she indicated her claim for an exemption on that date, nor does that refusal to allow it in any way bar her from making a claim before the auditor for the cash in hand. The claim for the $500 widow's exemption was refused by the auditor, not on the ground that she had no right to present it, but solely on the ground that by her delay in making her claim she had waived any right to claim the same. The auditor has not filed with his report any argument in support of the same, but from the argument before us by the counsel for Mrs. Ewan and from the wording of the conclusion of law of said learned auditor we have come to the conclusion that he held as he did because of the decisions of the Supreme Court of this State, particularly Kerns' Appeal, 120 Pa. 523, hereinafter referred to.

Upon the argument in this case and in considering it at the time of that argument, we were much inclined to the opinion that the widow should be allowed her exemption as claimed, and that, as the rights of no other person had been in any way interfered with and as there was no change in the situation in this estate because of her delay in making this claim, she should not, because of her laches, be deprived of that claim, which is intended for the support of the widow upon the death of the husband and in regard to which the law has always been careful to make allowance, if possible. Upon examination of the authorities, however, we are of the opinion that, whatever our own thought in the case may be, we are bound by the opinions filed by the Supreme Court of this State and that we cannot allow this exemption after a delay of more than 5 years. The leading case in reference to a delay by a widow in making her claim for exemption is that of Kerns' Appeal, 120 Pa. 523, in the course of discussion in which Mr. Justice Green, writing the opinion of the Supreme Court, makes this statement (p. 531) : "Without prolonging the discussion, we decide now that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to the right and conclusive evidence of a waiver." No statement of law made by an appellate court could be clearer than that and, while the case may have been decided on other grounds, so long

as that bald statement of the Supreme Court of Pennsylvania stands, we of course cannot ignore it and cannot set up our own opinion against it. We cannot find any place where that opinion has been reversed by the Supreme Court at a later date or modified, and we are bound by it as it exists. It not only has not been reversed so far as we can find, but in Machemer's Estate, 140 Pa. 544, the lower court in an opinion affirmed per curiam says: "The case of Kerns's App., 120 Pa. 523, is a complete answer to this exception. It reviews the former decisions on this subject and discusses it at length. It was there held that a delay of over three years on the part of a widow, in exercising her right to take $300 in money or property of her deceased husband's estate under the exemption law of 1851, is fatal to the right and conclusive evidence of a waiver."

In Clark's Estate, 275 Pa. 506, Mr. Justice Simpson, speaking for the court, says (p. 508) : "It may now be considered as established by Kerns' App., 120 Pa. 523, and Machemer's Est., 140 Pa. 544,—the earlier conflicting authorities being overruled therein,—that if there has been no sale of the property allotted to a widow, an award of exemption to her may be set aside, on due application, if she had remarried 'before her election was made' or if there was 'a delay of a year in claiming her exemption.' " And in Wilson's Estate, 297 Pa. 348, the court says: "In Beck's Estate, supra, [265 Pa. 51] a delay of 15 months in making an election was held insufficient to bar the right, while, on the other hand, a delay of three and one-half years was held to be 'gross laches on the part of the widow in exercising her right of election to take the benefit of her exemption, and operates as conclusive proof of a waiver of her right' (Kerns' App., 120 Pa. 523)".

Considering these authorities and more particularly the fact that Kerns' Appeal has been sustained by the Supreme Court from time to time up until almost the present time, we feel, as did Judge Stewart while presiding on this bench, in Snider's Estate, 4 Dist. R. 458, where he said: "Had the demand for the appraisement been delayed more than three years after the death of Hiram Snider, we would have been compelled, under the authority of Kerns' Appeal, 120 Pa. 523, to withhold confirmation. That case decides that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to her right and conclusive evidence of a waiver." It is true that Judge Stewart allowed the exemption in this case because the claim was made in about 2½ years, but his feeling as to being bound by the opinion in Kerns' Appeal is indicated by what he said in Snider's Estate; and now we are even more firmly bound by it, as it has been sustained and followed by the Supreme Court ever since that date.

In addition to that, we find that the lower courts of this State have felt themselves bound by the opinion in Kerns' Appeal and the cases following it ever since that time. In Falvey's Estate, 15 D. & C. 455, Judge Stewart, of Northampton County, follows and discusses this estate and Machemer's Estate, and feels that he was bound thereby, and this was true also in Crosby's Estate, 12 Erie 79, where Judge Clark followed this ruling of the Supreme Court. In the estate of D. Frank Cofrode, a case decided by Judge Solly in the Orphans' Court of Montgomery County, 41 Montg. 75, these cases are followed and a discussion of them made by the learned court. In that case, the facts very much resemble the facts in the present case. In the instant case before us, the mother of the decedent lived on the real estate, and no administration was raised until after her death and no claim was made for the exemption during that time. In Cofrode's Estate the court says (p. 77) : "The widow contends that, as the only asset of her husband's estate at the time of his death was his undivided

interest in remainder in his father's estate, if she had claimed her exemption out of that interest, it would have resulted in the sale of the real estate at a sacrifice, and she refrained from making her claim and election in 1912 for that reason by the advice of her counsel, and, therefore, the delay in making claim cannot be held to operate as a waiver of her right nor should she be charged with laches. A sale of part of the real estate might have resulted, it is true, but the observation is ventured that a sale in all likelihood would have been avoided by the other parties in interest paying the exemption in cash. The outstanding fact of the case is that no claim was made, none even intimated until a long time after the death of the husband, and after the death of his mother, who, with the widow, are the persons entitled to his estate." In this estate, Judge Solly discussed very fully the right of the widow, her waiver by reason of laches, and the cases which control, and we quote from his opinion as follows:

"The Act of 1851 and no other statute provides the limit of time in which a widow must make demand for the exemption allowed her out of her husband's estate. There is no definite period within which the demand for the appraisement is to be made, as stated in Lane's Estate, 6 Pa. Dist. Rep. 618 (Stewart, P. J.), and in Reed's Estate, 40 Pa. C. C. R. 217, it is said, the time when the demand should be made is regulated by the circumstances of the particular case. The right of a widow under the Act of 1851, to retain of the real or personal estate of her deceased husband to the value of $300 does not vest, however, at his death, but only when she has elected to exercise the right. Kerns' Appeal, 120 Pa. 523. The right must be asserted within a reasonable time after her husband's death, because, if for no other reason, the exemption, as said in Sweeney v. Hunter, 145 Pa. 363, is a humane provision for the immediate wants of the widow and family. The property retained 'shall not be sold, but suffered to remain for the use of the widow and family.' The courts look with disfavor on a long delay by a widow in claiming exempt property from her husband's estate. She cannot sit quietly by for a long period of time after the death of her husband and then assert claim, even if no rights have intervened and no changes have been made with respect to the estate. The heirs and next of kin have the right to believe that by her silence she does not intend to make claim. In Kerns' Appeal, 120 Pa. 523, the court after reviewing a number of cases said: 'without prolonging the discussion, we decide now that a delay of over three years on the part of a widow in exercising her right to take $300 in money or property of her deceased husband's estate, under the exemption law of 1851, is fatal to the right and conclusive evidence of a waiver.' An examination of the cases on the subject fails to disclose that this case has been overruled or modified. It is approved in Machemer's Estate, 140 Pa. 544, and Clark's Estate, 275 Pa. 506. The first syllabus of the latter case is 'a widow must make her claim for exemption under the Act of June 4, 1883, P. L. 74, within one year of the death of her husband, and before she remarries.' There are many lower court decisions disallowing exemptions because of unreasonable delay by a widow in making claim for exemption, and it would burden the opinion by citing all of them. In Hoffeditz's Estate, 4 Pa. Dist. Rep. 125, there was a delay of four years; in Bavington's Estate, 5 Pa. Dist. Rep. 285, there was a delay of nearly five years; in Pratt's Estate, 23 W. N. C. 543, there was a delay of nearly five years; in Michelotti's Estate, 28 Pa. Dist. Rep. 324, there was a delay of six years. In each case the delay was held to be unreasonable and conclusive evidence of waiver."

In the instant case, it is true that the widow of Levi Crider, the mother of the decedent, claimed that she owned the real estate, but the deed to William S. Crider was on record, and it was known to his widow, the claimant herein, that

he was the owner of the real estate, and she so testified before the auditor. Her action in not making her claim for exemption may have been with a view of allowing her mother-in-law to remain in possession of this property during her lifetime, but under the opinions of the courts as they have been handed down, and particularly in light of the opinions of the Supreme Court following the very emphatic rule laid down by that court in Kerns' Appeal, we have no option except to sustain the auditor in refusing this claim of the widow for her exemption and to disallow the same. As we have said already, we feel that the rule should be an equitable one, having regard to the rights of other parties in the estate and not a rule of time as now laid down by the higher courts, but they have established that rule and have consistently followed it to the present time, and we cannot do otherwise than uphold the decision of the auditor in this matter.

We will therefore sustain the auditor's conclusions insofar as the funeral expenses of $254 is concerned and overrule the exception filed insofar as that account is concerned. We will, however, overrule the action of the auditor insofar as the $75 tombstone amount is concerned and sustain the exception to his report as to that sum. We will also sustain the auditor and overrule the exception insofar as the disallowance of the widow's $500 exemption is concerned.

Now, therefore, August 4, 1933, the exception filed to the report of the auditor, insofar as it affects the surcharge of the accountant with the sum of $75 expended by her for a tombstone for the deceased is concerned, is sustained. The exception as to the surcharge to her of the sum of $254 for funeral expenses is overruled. The exception as to the refusal to allow her her $500 widow's exemption is also overruled. The report of the auditor is referred back to him to make distribution in accordance with this opinion.

From Albert Strite, Chambersburg, Penna.