## Estate of William Cram, Deceased.

464

Argued April 13, 1934.

Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*Fred C. Kiebort,* and with him *W. J. Sirdevan,* for
appellants.

*G. Wayne Altenburg,* for appellee.

Opinion by Parker, J., October 3, 1934:

The question raised on this appeal is whether a
widow has lost the right to claim her exemption under
Section 12 of the Act of June 7, 1917, P. L. 447 (20
PS 471), by reason of a delay in making claim for
more than nineteen months after the death of her
husband and more than a year after letters testa-
mentary were issued on his estate.

William Cram died testate on May 5, 1931. There-
after his will was admitted to probate and on October

31, 1931, letters testamentary were issued to Mary Cram, the appellant. On December 1, 1931, the widow, Minnie Cram, elected to take against the will of her husband. Nothing more appears to have been done toward the settlement of the estate until December 7, 1932, when the executrix presented a petition for the sale of decedent's real estate for the payment of debts. On December 22, 1932, the widow presented a petition to the orphans' court asking to have the decedent's real estate set aside to her as a widow's exemption. Appraisers were appointed and return was made to court when exceptions were filed by Mary Cram and John D. Cram, residuary devisees. After the taking of testimony, the exceptions were dismissed and the widow's appraisement was finally confirmed, whereupon this appeal was taken.

The appellants contend that the widow by her laches waived her right to claim the exemption. While there are decisions of orphans' courts which would seem to sustain the conclusion of the court below, the adjudications of the Supreme Court are to the contrary. The Act of 1851 granting exemptions to widows was supplied by the 12th section of the Fiduciaries Act of 1917, and most of the decisions pertinent to the question in issue deal with the Act of 1851.

"The object of the legislature was to prevent the sale of the property; and every act or omission of the debtor or his widow and children, which amounts to an acquiescence in, or an affirmance of the sale, is in direct contravention of that object. The Act of 1850 was intended to give to the widow and children of the debtor the privileges which the debtor himself enjoyed in his lifetime, under the Act of 1849": Neff's Appeal, 21 Pa. 243, 247. The court in that case held that the two acts referred to were in *pari materia*, that they must be construed with reference to each other, and that what is clear in one statute could

properly be called in aid to explain what is obscure and ambiguous in the other. "The right of a widow to retain real or personal property of her deceased husband's estate to the value of $300 is a personal privilege, no less than is that of a debtor to retain against an execution-creditor. Of course it may be waived, and it is waived entirely when she neglects to demand an appraisement": Davis' Appeal, 34 Pa. 256. "The widows' law of 14th April, 1851, contemplates a prompt and finished proceeding in her behalf, immediately after the administrator has qualified himself to act. Appraisement of the defendants' goods is the first duty of the administrator, under the general law of his office; but it is especially so under this special enactment in behalf of the widow. He is to cause it to be done with all the promptitude, and in the same manner that the sheriff or constable proceeds, under the Act of 1849, when a similar amount of a debtor's goods are to be exempted from sale": Vandevort's Appeal, 43 Pa. 462, 465. No specific time was fixed by the statutes either of 1851 or of 1917 within which a demand for appraisement must be made. However, in the leading case of Kerns' Appeal, 120 Pa. 523, 530, 14 A. 435, the Supreme Court very definitely said: "While we do not mean to say that she should be allowed so much as one year in which to claim her $300 exemption, the analogy of the statute which subjects her to a compulsory citation to elect as against a will, at the expiration of twelve months from her husband's death, admonishes us that a delay of a year in claiming her exemption is gross laches, and in itself evidence of a waiver of her right." In that connection the court there pointed out that there was no reason for any serious delay in the exercise of a widow's right of exemption for she is entitled to it whether her husband died testate or intestate, and while she needs time to inform herself

as to the condition of the estate before making an election to take against the will for which she is allowed a period of one year, there is no occasion for any such delay in the claim for exemption.

In Clark's Estate, 275 Pa. 506, 508, 119 A. 590, Mr. Justice SIMPSON said: "It may now be considered as established by Kern's App., 120 Pa. 523, and Machemer's Est., 140 Pa. 544,—the earlier conflicting authorities being overruled therein,—that if there has been no sale of the property allotted to a widow, an award of exemption to her may be set aside, on due application, if she had remarried 'before her election was made' or if there was 'a delay of a year in claiming her exemption.'" We are likewise of the opinion that the only logical point at which the line may be drawn is after the period of one year. Having the very definite statements by the Supreme Court, we hold that the delay of the widow for nineteen months after her husband's death and for more than thirteen months after letters testamentary were issued on his estate is evidence of laches and amounts to a waiver.

The appellee contends that there are special circumstances which should be taken into account in determining whether there was a waiver and relies upon the following question and answer: "After he died why did you wait until December, 1932, to claim your widow's exemption? A. We thought it would be settled out of court. I first hired legal counsel to protect my interest in December, 1932. I am 58 years of age." More than a year prior to the presentation of the claim for exemption, the widow had elected to take against the will, which would indicate that she had some knowledge of her rights. She does not say that she had made any claim for her exemption or that there were, in fact, any negotiations looking to a settlement, but depends upon the mere bald statement that she thought it would be settled out of court. This

comes far short of explaining the delay. If this were a good answer to such a delay, it would nullify the rule.

The judgment of the lower court is reversed at the cost of appellee.