# Benefits Under Veterans' Preference Act

LEHRMAN, Deputy Attorney General, September 26, 1945.—You have requested interpretation of several sections of the recently-enacted Veterans' Preference Act of May 22, 1945, P. L. 837. We have revised your inquiries and list them as follows:

1. What is the interpretation of the word "disabled" as used in section 7 of said act?

2. Can a husband and a wife both share the benefits extended under section 7 if the husband is only partially disabled?

3. What does the term "widow" as used in section 7 of said act mean?

4. Does the widow lose her preference if she remarries?

5. What do the words "preferential rating" as used in section 7 mean?

6. Does section 5 of the act waive the necessity of the soldier's possessing the minimum experience qualifications required for public positions?

Certain aspects of the subject of statutory preferential treatment of United States war veterans in public employment in the Commonwealth have been carefully reviewed by this department in formal opinion no. 315, dated January 31, 1940, 1939-1940 Op. Atty. Gen. 171; formal opinion no. 320, dated February 15, 1940; Preferential Treatment of War Veterans (No. 2), 38 D. & C. 129, 1939-1940 Op. Atty. Gen. 190; formal opinion no. 436, dated September 2, 1942, Preferential Treatment of War Veterans (No. 3), 45 D. & C. 311, 1941-1942 Op. Atty. Gen. 228.

These opinions construe the Acts of June 27, 1939, P. L. 1198, 51 PS §491.1 et seq., April 12, 1939, P. L. 27, 51 PS §481, and August 5, 1941, P. L. 872, 51 PS §491.6, all of which have been expressly repealed by section 9 of the Act of 1945 which is under discussion. Your questions deal with the interpretation of said act, which attempted to codify the existing laws and to add several new provisions.

Turning now to the first question, you wish advice on the interpretation of the word "disabled" in section 7.

Section 7 of the Act of 1945 reads as follows:

"The same preferential rating given to soldiers under the provisions of this act shall be extended to include the widows and wives of *disabled* soldiers." (Italics supplied.)

Webster's Dictionary defines the term "disabled" as being one who is incapacitated as by illness, injuries, wounds, or the like.

Our investigation of the interpretation of the word "disabled" finds it has different legal meanings depending on the relation of its use.

In the case of Keiser v. Philadelphia & Reading Coal & Iron Co., 134 Pa. Superior Ct. 104, the court, in discussing the meaning of the word "disability", said (p. 107):

"It must always be borne in mind that the disability contemplated by our compensation law is the loss of earning power as the result of an injury. If the compensation authorities find on sufficient evidence that a claimant is not able to do continuously even light work of a general character, then he is entitled to compensation for total disability. . . ."

Moreover, it is our understanding that the United States Veterans Administration, the War Department, the Navy Department, and the Coast Guard certify to a veteran's disability upon discharge and each disabled veteran receives an official statement of such fact.

The United States Civil Service Commission applies this test in determining what is a disabled veteran. Uniformity of determining the status of a disabled veteran is highly desirable. Therefore, it is our opinion that the word "disabled" as used in this act denotes any soldier, within the meaning of this act, who has an official statement from the Veterans Administration, the War Department, the Navy Department, or the Coast Guard certifying to his disability.

Your second question is:

"2. Can a husband and a wife both share the benefits extended under section 7 if the husband is only partially disabled?"

In construing this act certain basic principles of statutory construction must be kept in mind. One of these principles reiterated by the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, is as follows:

"Section 51. Construction of Laws; Legislative Intent Controls.—The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Nothing is said in the act about sharing the preference. Hence, the plain construction of the act would prevent this interpretation.

By your third question you ask the definition of the term "widow" as used in section 7. The act is silent on what type of widow is meant. Does it refer to widows of all soldiers who may have died from any cause whatsoever? Does it refer to widows of soldiers killed in action, or does it refer only to widows of *disabled soldiers?*

Unfortunately, the legislation is not clear as to the use of this word since it has several meanings. Section 52 of the Statutory Construction Act, supra, reads as follows:

"Section 52. Presumptions in Ascertaining Legislative Intent.—In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . .

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth; . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

The title of the present act reads as follows:

"Providing for and requiring in certain cases preference in appointments to public position or on public works for honorably discharged persons who served in the military or naval service during any war in which

the United States *engaged; and in certain cases for the widows and wives of such persons."* (Italics supplied.)

Section 1, defining the term "soldier", reads as follows:

"The word 'soldier' as used in this act, shall be construed to mean a person who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war in which the United States engaged, *and who has an honorable discharge from such service."* (Italics supplied.)

We cannot imagine that the legislature by defining the word "soldier" in section 1 of the act intended only the widow of a soldier who has obtained an actual honorable discharge from the Army to be the recipient of the benefits of this act. We are informed that soldiers killed on the field of battle do not technically receive an honorable discharge, but their family or next of kin receive a notice of death, accompanied by a formal citation that the deceased was killed in line of duty in defense of his country. No certificate in the form of an honorable discharge is, however, granted. It does not seem probable or possible that the legislature intended by the use of the language in section 1 to eliminate the widow of a soldier who was killed in action.

Nor does it seem probable that the legislature intended to disqualify the widow of an honorably discharged soldier who later dies in preference to a widow of a disabled soldier. Hence, it would seem improbable that the legislature did not intend to take care of all widows of deceased soldiers whether they be soldiers killed on the field of battle, soldiers who obtained honorable discharges and later died in civilian life, or honorably discharged soldiers who were in fact disabled. We, therefore, construe the word "widow" in section 7 as meaning a widow of any type of honorably discharged soldier, whether the soldier is killed on the field of battle or dies at some later date. The fact that the soldier was not disabled before he died would not

prevent his widow from enjoying the benefits of this law.

Your fourth question is:

"4. Does the widow lose her preference if she remarries?"

The primary question is as to the interpretation to be placed upon the term "widow" as used in section 7. Ordinarily the word means "a woman whose husband is dead and who has not married again": Webster's New International Dictionary, p. 2334. However, there is considerable authority holding that the term may, when used in a statute, be applied to a woman who, although a widow of her former husband, has remarried. See Hansen, Admx., v. The Brann & Stewart Co. (1917), 90 N. J. L. Rep. 444. See also annotation at 72 A. L. R. 1324.

Such decisions are of no direct aid in the solution of our problem, for they indicate that the term "widow" as used in statutes is not fixed and positive but, on the contrary, calls for construction. We must decide what legal import, meaning, or effect the legislature intended by the term "widow" as used in this act.

In Commonwealth v. Powell, Exec., 51 Pa. 438 (1866), our Supreme Court had occasion to construe the word "widow". It held the word "widow" was entirely and exclusively descriptive of an unmarried condition and in order to secure the benefits she must bring herself clearly within the class indicated. The remarried defendant could not be held to be a widow. To the same effect is the case of Kerns' Appeal, 120 Pa. 523 (1888). In that case the court said (p. 531):

". . . she ought to be at that time the person who is qualified by law to exercise the right, to wit, the 'widow' of the decedent. She is not his widow if she is then the wife of another man . . .".

The purpose of this act is to aid veterans, their wives or widows in gaining employment. The act is meant to help the widow while she remains unmarried. We do

not think the legislature intended her to reap benefits after her remarriage to some other person: Commonwealth v. Stauffer, 10 Pa. 350 (1849).

Your next question is:

"5. What do the words 'preferential rating' as used in section 7 mean?"·

The legislative intent in the use of the language "same preferential rating . . . under the provisions of this act", in section 7 is not clear.

Analyzing the preceding sections of the act it is evident this law is composed of numerous features to aid the veteran.

Section 6 of the act requires contractors in construction of public works to give preference to veterans.

Section 3 imposes the duty on civil·service powers to give an additional 10-percent grade to veterans in examinations.

Section 4 requires the appointing powers to prefer veterans in various instances. The first paragraph deals with appointment or promotion to public office where no civil service examination is required. In making such appointment or promotion whenever the soldier possesses the necessary qualifications, the appointing power is required to give preference to such soldier.

The second paragraph deals with appointment or promotion where a civil service examination is required. If a soldier possesses the requisite qualifications and his name appears on the eligible or promotional list certified, the appointing power is required to give preference to such soldier notwithstanding that he is not the highest on the list.

The third paragraph deals with appointment or promotion to public office where a civil service examination is required. But where the name of a soldier who has passed the required examination for appointment or promotion and who possesses the requisite qualifications does not appear on the eligible or promotional list,

in such case the promotional power may give preference to the soldier who has thus passed the required examination.

In the case of Commonwealth ex rel. v. O'Leary et al., 46 D. & C. 397 (1942), Judge Soffel construed the provisions of the 1941 act dealing with veterans, and analyzed the preferences given under that act, section 4 of which is identical with section 4 of the present act.

The cardinal question in determining the meaning of the words "preferential rating" is what the legislature intended, by reference to the other language in the act. The preceding sections as hereinbefore discussed specify certain types of preferences which the soldier is entitled to. The words "preferential rating" are not restricted by reference to any preceding section. Hence, it would appear the legislature intended these words to apply to all the preceding sections, and used them in a descriptive manner to relate back to all preferences given by virtue of any section of the act.

It is our opinion, therefore, that the words "preferential rating" as used in section 7 refer to any preferences specified in any preceding section of this act.

Turning now to the last question, it is:

"6. Does section 5 of the act waive the necessity of the soldier's possessing the minimum experience qualifications required for public positions?"

Section 5 of the act reads as follows:

"Section 5. The lack of academic or scholastic training or experience, age, loss of limb or other physical impairment which does not in fact incapacitate any such soldier shall not be deemed to disqualify him, provided he possesses the other requisite qualifications to satisfactorily perform all of the duties which the position requires."

Since the language of the act is plain and on its face susceptible of a logical construction, we are not authorized to go beyond it.

Statutory preferential treatment of veterans in public employment in the Commonwealth is no new de-

parture. It has long been an established principle that men who have served their country faithfully during wars should by their service be given preferential treatment in public office. This principle has been recognized by the Federal Government and many States.

In Commonwealth ex rel. v. Schmid, 333 Pa. 568, Mr. Justice Kephart reviewed the veterans' preferential legislation and stated (p. 577) :

"Our conclusion from these decisions is that, so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory. In either case the minimum qualification for appointment is success in an examination. Its passage satisfies the requirement that appointments of public employees be made only of persons reasonably fitted for the position."

We do not think that language gives a preference to a veteran without the minimum qualifications for holding the job. That is to say, a stenographer would not be eligible for a public stenographic position if she had no ability in typewriting. However, so long as she possesses the minimum qualifications of typing she would be eligible for appointment in obtaining preference under this act.

To summarize, you are advised as follows:

1. The interpretation of the word "disabled" in section 7 means a soldier who has an official statement from the Veterans Administration, the War Department, the Navy Department, or the Coast Guard certifying to his disability.

2. A husband and wife cannot share the benefits extended under section 7 of the act if the husband is only partially disabled.

3. The term "widow" as used in section 7 means a widow of any type of honorably discharged soldier, whether the soldier is killed on the field of battle or later dies as a result of some disability.

162

4. In order that a widow may qualify for the benefits given under section 7 of this act, she must be the widow of an honorably discharged soldier and remain unmarried.

5. Preferential ratings given to wives and widows in section 7 of the act relate to all preferences in the act to which the honorably discharged soldier would be entitled.

6. Section 5 of the act does not waive the necessity of the soldier's being required to possess the minimum experience qualifications designated for public positions.